UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

APRIL DAWN SHAW,

      Plaintiff,

v.                                  Civil Action No. 2:15-cv-432

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

      Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff April Dawn Shaw ("Shaw") seeks judicial review of a decision by the Commissioner of Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Specifically, Shaw claims that the Administrative Law Judge ("ALJ")'s Residual Functional Capacity ("RFC") determination failed to account for the effects of her mental impairments, and the ALJ relied on testimony from the vocational expert ("VE") that did not fairly account for her impairments. This action was referred to the undersigned United States Magistrate Judge pursuant to provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. Because the ALJ's analysis of the functional limitations caused by Shaw's mental impairments does not comply with binding precedent released just prior to his

1

decision, this report recommends that the district court vacate the final decision of the Commissioner and remand the case to the SSA for further proceedings .

## I. PROCEDURAL BACKGROUND

Shaw applied for DIB and SSI on May 28, 2013, alleging a disability onset date of June 21, 2012. (R. 227-43). Shaw's claims were denied initially and upon reconsideration. (R. 152-57, 164-77). She requested and received a hearing in front of an ALJ, which was held on March 24, 2015. (R. 26). The ALJ issued an unfavorable decision on March 26, 2015, finding that Shaw did not qualify for DIB or SSI because she was not disabled under the relevant provisions of the Social Security Act. (R. 20). Shaw appealed the decision and the Appeals Counsel denied her appeal on July 27, 2015, making the ALJ's ruling the Commissioner's final decision. (R. 1-3); see 20 C.F.R. §§ 404.981, 416.1481. Having exhausted her administrative remedies, Shaw filed this civil action seeking judicial review of the Commissioner's decision.

## II. FACTUAL BACKGROUND

Shaw was born in 1972, has a high school equivalent education (GED), and lives in Norfolk, Virginia. She was 40 years old when she filed the instant claim for DIB and SSI, and 39 years old at the time of her alleged disability onset date. Shaw has a varied work history, including jobs as a cashier, housekeeper, and store clerk. On June 20, 2012, as a result of Shaw's physical

2

impairments - primarily back pain- an ALJ found that she was
disabled for a closed period from August 1, 2008, through May 1,
2010. (R. 90-91). In the same decision, the ALJ found that Shaw
was able to perform a full-range of light work as of May 2, 2010,
because her back pain had improved through surgery and she had
returned to work. (R. 89). Shaw worked until July 31, 2012, when
she was let go from her job for missing a scheduled workday. (R.
284). Although she worked until the end of July, Shaw's instant
claim for disability alleged that she could not work as of June
21, 2012, due to degenerative disc disease, neck pain, high blood
pressure, high cholesterol, right thumb pain and infection,
insomnia, anxiety, and depression. (R. 227, 235, 283-84).

A.   Relevant Medical Treatment[1]

Shaw has experienced chronic issues with her cervical and
lumbar spine for nearly ten years. In 2008, Shaw underwent
cervical spine fusion surgery that was ultimately unsuccessful at
producing fusion at the desired levels. (R. 372, 464). Although
she was able to work intermittently after the surgery, Shaw's back
problems persisted and eventually became worse, prompting her to
seek treatment again in 2013.

---

[1] Shaw has undergone extensive medical treatment for her physical
impairments, primarily issues related to her spine and corresponding
fusion surgery. However, in her pleadings in this case, Shaw only
challenges the ALJ's RFC assessment of her mental limitations. Because
the pain medication and other symptoms exacerbate her mental impairments,
this report will consider her physical condition insofar as it relates to
her mental health and limitations, and the ALJ's findings.

On May 22, 2013, Shaw reported to The Spine Center at Chesapeake complaining of lower-back pain that radiated down to her posterior. (R. 462). Shaw had subsequent consultations with an orthopedic surgeon, David Goss, M.D. ("Dr. Goss"), who placed her on a regimen of pain medications, pain management, and physical therapy. (R. 459-61). Despite this treatment, Shaw reported no improvement in her symptoms and on September 23, 2013, she was determined to be a candidate for opioid therapy and entered into agreement to begin that treatment. (R. 515). At a follow-up appointment on October 23, 2013, Shaw tested positive for marijuana use and was refused any increase to her pain medication. (R. 506-09). By February 17, 2014, Shaw's condition had not improved and, as a result, Dr. Goss recommended that Shaw undergo another spinal surgery. (R. 561).

Dr. Goss performed a lumbar laminectomy and decompression with discectomy at L4-L5 on March 18, 2014. (R. 538-39). Shaw reported to Bon Secours Neuroscience Center for Pain Management following the surgery, where she reported an overall improvement in pain and quality of life. (R. 599). She was continued on her medication and pain management protocol until she was incarcerated for 90 days in July 2014. (R. 597, 599, 601, 603). Following her incarceration, she reported back to Bon Secours and complained of back pain. (R. 603). Shaw was given a new prescription for morphine by Gerry Smith, M.D. Id.

4

Contemporaneous with her treatment for back pain, Shaw sought mental health treatment from the Norfolk Community Services Board on November 15, 2012.[2]  (R. 356-67, 568-84).  Shaw was previously diagnosed with major depression (without psychotic features), anxiety disorder, panic disorder with agoraphobia, alcohol abuse, cannabis abuse, cocaine abuse, and post-traumatic stress disorder. (R. 346).  Her psychiatrist, Sari Kohazi, M.D. ("Dr. Kohazi"), observed that Shaw was doing well on her medication, which included Xanax, Doxepin, and Celexa.  Id.  Dr. Kohazi observed no side-effects from the medication, found that Shaw's symptoms were adequately controlled, and that her mental status was normal.  (R. 346-47).  Dr. Kohazi also rated Shaw's Global Assessment of Functioning ("GAF") at 65.[3]  At follow-up visits on February 14 and March 12, 2013, Shaw's prognosis remained unchanged.  (R. 348-51).

---

[2] This was not Shaw's first consultation with a psychiatrist.  Records offered by Plaintiff's counsel from Shaw's earlier hearing show that she was being treated as early as June 28, 2011, by Paul Mansheim, M.D., at Riverpoint Psychiatric Associates.  (ECF No. 11-3, at 9).

[3] Clinicians use the GAF scale, devised by the American Psychiatric Association and ranging from zero to one hundred, to indicate an overall judgment of a person's psychological, social, and occupational functioning.  Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000).  A GAF of 71-80 indicates that "if symptoms are present, they are transient and expectable reactions to psycho-social stressors;" a GAF of 61-70 indicates that the individual has "some mild symptoms;" a GAF of 51-60 indicates that the individual has "moderate symptoms;" and a GAF of 41-50 indicates that the individual has "serious symptoms."  Id.  However, the DSM-5 abandoned the use of GAF scores as a diagnostic tool for assessing a patient's functioning because of the questionable probative value of such scores.  Diagnostic and Statistical Manual of Mental Disorders (DSM-V) 16 (5th ed. 2013).

On June 12, 2013, Shaw was seen by Bill Forte, M.D. ("Dr. Forte"), and requested an early refill of her pain medication. (R. 352). Dr. Forte contacted the Virginia Prescription Monitoring Program to review Shaw's prescription history and determined that she was using her medication excessively. Id. On July 3, 2013, Shaw complained that she had been out of her medication for a month and, without it, had become nervous, suffered four or five panic attacks a week, and could not sleep. (R. 354). However, Joseph Schwartzer, M.D. ("Dr. Schwartzer"), found that Shaw was only mildly anxious and that she reported only mild, intermittent depression. Id. As a result of his examination, Shaw's excessive use of medication, and her history of drug and alcohol abuse, Dr. Schwartzer refused to prescribe any additional controlled substances. Id. Shaw, threatening to report the clinic, left and did not return for future treatment. (R. 355). Dr. Schwartzer reported that Shaw had a GAF of 60 that day. Id. Shaw did seek continued mental health treatment from Norfolk Psychiatric Associates from October 1, 2013, through July 3, 2014, but there was no apparent change in her status or course of treatment. (R. 568-84). There is no evidence that Shaw ever sought emergency services or was hospitalized for mental health reasons.

B.  **Medical Source Statements and Administrative Hearing**

The Virginia Disability Determination Services ("DDS") prepared four reports during the assessment of Shaw's disability claims. The first two reports were prepared upon initial consideration, and the second two upon reconsideration. (R. 96-106, 107-117; 120-133, 135-149). In both sets of reports, the reviewers found that Shaw did not have a severe or severely limiting combination of mental impairments. Id. On September 10, 2013, Richard S. Hoffman, M.D., preformed a consultative examination and prepared a corresponding report. (R. 502-04). However, he made no findings concerning Shaw's mental health, instead addressing only her physical limitations.

Following the denial of Shaw's claims upon reconsideration, she petitioned for an administrative hearing in front of an ALJ. The hearing to adjudicate her claims in the instant application for DIB and SSI was held on March 24, 2015. (R. 26). At the hearing, Shaw testified that she stopped working in July 2012 because of her medication, which made her sleepy and unable to stand for long periods of time. (R. 32, 38). Shaw also said that she was let go for calling out of work too many times. (R. 33). She reported that she was currently able to perform some household chores, shop for small items, and socialize with friends occasionally. (R. 38-40). Shaw stated that although her back surgery in March 2014 helped alleviate the pain radiating to her

legs, she was still taking morphine three times a day for neck and back pain. (R. 33-34, 37). When asked whether she could perform work that allowed her to sit or stand as needed, she stated she didn't think so because her medication caused her to "nod off." (R. 38).

A VE also testified at Shaw's hearing. (R. 43-45, 214-19). The ALJ posed a series of hypotheticals to the VE that asked whether someone with Shaw's vocational profile and limitations could perform her previous work or, in the alternative, any work that existed in the national economy. (R. 44). Specifically, the ALJ posed the following questions:

> Q: I'd like for you to assume a person of the same age, education, and work background as Ms. Shaw, capable of light work, provided that work allowed the individual to alternate positions sitting and standing on an occasional basis during the course of a work day; would not require the performance of more than occasional postural activities, and would not require any climbing or exposure to heights or hazards. I'd also like you to assume that that individual could perform simple repetitive, and routine tasks. Would that profile support any of Ms. Shaw's past work?
>
> A: No, sir.
>
> Q: Would there be any light or sedentary, unskilled work that that profile could support?
>
> A: Yes, sir.

(R. 44). The VE testified that someone with the stated vocational profile and limitations could perform unskilled sedentary and light work, such as being an agricultural produce sorter, rental clerk, and food and beverage order clerk. (R. 44-45). When asked

to credit Shaw's testimony that she needed to "lie down for significant periods each day," the VE stated there would be no full-time work available at any exertional level to accommodate that limitation. (R. 45).

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that

decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589.   The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390.   Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law.   Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.   ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits, and be under a "disability" as defined in the Act.   42 U.S.C. §§ 416(i), 423.   The Social Security Regulations define "disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).   To meet this definition, a claimant must have a "severe impairment" that makes it impossible to do previous work or any other substantial gainful activity that

exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

20 C.F.R. § 1520(a)(4).

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. See id. §§ 404.1520, 416.920. The burden

11

of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## A.   The ALJ's Decision

After conducting this five-step analysis, the ALJ concluded that Shaw met the insured status requirements, but was not disabled within the meaning of the Social Security Act between her alleged disability onset date, June 21, 2012, and the ALJ's decision, March 26, 2015.

At step one, the ALJ found that Shaw had not engaged in substantial gainful activity since her alleged disability onset date, June 21, 2012. (R. 10). At step two, the ALJ found that Shaw suffered from the following severe impairments: neck disorder (status post fusion), back disorder (status post laminectomy),

12

obesity, mood disorder, and anxiety disorder.  (R. 11).  At step three, the ALJ found that Shaw did not suffer from an impairment or combination of impairments that met the severity of one of the listed impairments.  Id.  However, in conducting the step three analysis, the ALJ observed that Shaw had moderate difficulties in concentration, persistence, or pace, stating that those difficulties "are primarily related to her medically determinable severe impairments and pain."  Id.  This determination was also based, in part, on Shaw's own statements in her Function Report dated July 1, 2013, that she "does not finish what she starts and could pay attention for about 2 hours."  (R. 12).  At step four, the ALJ found that Shaw's impairments prevented her from performing her past relevant work.  In fashioning Shaw's RFC, the ALJ found that she could perform light work, except that there must be an option to alternate positions between sitting and standing on an occasional basis during a regular work day; she could only perform occasional postural activity; she could not perform work that required climbing, exposure to heights or hazards; and she could perform "no more than simple, repetitive, routine tasks, due to limitations in concentration, persistence, or pace."  (R. 13).  At step five, relying on the VE's testimony, the ALJ concluded that Shaw could perform jobs that exist in significant numbers in the national economy.  (R. 19).

In determining Shaw's RFC at step four, the ALJ assessed her mental impairments, finding that "[w]hile a review of the medical record reveals the claimant has been diagnosed with major depression . . . and anxiety disorder . . . the claimant has had normal psychiatric and psychological examination findings during office visits, and the claimant has stated she is doing well." (R. 17). The ALJ expressed skepticism over whether Shaw's "poor work history" was a result of her medical impairments, citing the fact that she continued working past her alleged disability onset date and was subsequently fired for missing work. Id. The ALJ also noted that Shaw had reported activities that were not "limited to the extent one would expect, given [Shaw's] allegation of disability." Id. Indeed, he highlighted the discrepancy between Shaw's reports that she spent most days lying down, watching television, or taking naps with the fact that she was picking her children up from school and had served ninety days in jail for a third larceny conviction. Id.

The ALJ found that the DDS consultant reports at both the initial and reconsideration level were entitled to moderate weight because the record supported mild restrictions in Shaw's activities of daily living. (R. 18). Similarly, the ALJ assigned moderate weight to Shaw's GAF scores because "the record as a whole supports mild limitations." Id. Finally, the ALJ assigned little weight to Shaw's own testimony because her progress notes

and consultative examinations "all suggest [Shaw] can perform work at the limited light exertional level," and her third larceny conviction suggested her "statements may not be entirely credible." Id.

## B. The ALJ Failed to Properly Explain how the RFC he Imposed Accounts for Shaw's Mental Impairments.

Shaw's only substantive argument in this court is that the ALJ's RFC failed to account for her mental limitations in concentration, persistence, or pace in the work setting. Pl.'s Br. at 2 (ECF No. 10). Because this RFC finding informed the ALJ's questions to the VE, Shaw also contends that the VE's testimony was not substantial evidence to support his finding that she was not disabled. Id. After reviewing the record, including the objective medical evidence, Shaw's testimony in front of the ALJ, and the ALJ's written decision, the undersigned finds that the ALJ's opinion failed to explain how the RFC accounts for Shaw's functional mental limitations in light of her moderate limitations in concentration, persistence, or pace described at step three. Accordingly, remand to permit the ALJ to conduct the required analysis is the appropriate remedy.

An RFC is the plaintiff's maximum ability to work despite her impairments. 20 C.F.R. § 404.1545(a)(1); see Social Security Ruling 96-9p, 1996 WL 374185 (S.S.A.) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis."). When, as is the case here, a plaintiff's

15

impairments do not meet or equal a listed impairment under step three of the sequential analysis, the ALJ must determine the plaintiff's RFC. 20 C.F.R. 404.1520(e). At step four, the ALJ then determines whether the plaintiff can perform her past relevant work. <u>Id.</u> § 404.1545(a)(5)(i). If the ALJ determines that the plaintiff cannot perform any relevant past work, as was the case for Shaw, the ALJ uses the RFC at step five to determine if the plaintiff can "adjust to any other work that exists in the national economy." <u>Id.</u> § 404.1545(a)(5)(ii).

The ALJ is responsible for determining a plaintiff's RFC at the administrative hearing level, and in making this determination, the ALJ considers all of the relevant medical and other evidence[4] in the record. <u>Id.</u> §§ 404.1527(b), 404.1545(a)(3), 404.1546(c). "[R]elevant evidence ... include[es] information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A.).

---

[4] "Other evidence" includes "statements or reports from [the claimant], [the claimant's] treating or nontreating source, and others about [the claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how ... how impairment(s) and any related symptoms affect [the claimant's] ability to work. 20 C.F.R. § 404.1529(a).

Here, the ALJ determined Shaw could perform light or sedentary work with certain postural limitations. In her claims before this court, Shaw has not argued that the exertional limitations fail to account for her physical impairments. With regard to mental impairments, the ALJ imposed an RFC limitation to "no more than simple, repetitive, routine tasks, due to limitations in concentration, persistence, or pace." (R. 13). Shaw contends this limitation did not adequately account for her mental impairments, arguing that because the ALJ determined at step three that she had "moderate limitations in concentration, persistence, and pace," he should have included additional limitations in her RFC or explained why additional limitations were not necessary. Pl.'s Br. at 17 (ECF No. 10). That is, Shaw argues that contrary to the Fourth Circuit's holding in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the ALJ's RFC "included only the nonexertional limitation that Shaw can perform no more than simple, routine, repetitive tasks . . . ." Id.

In Mascio, the Fourth Circuit held that the ALJ's "residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis,'" and "only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Mascio, 780 F.3d at 636

(quoting Social Security Ruling 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)). Additionally, the Fourth Circuit noted that "the residual functional capacity 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.'" Id. (quoting Social Security Ruling 96-8p). When the ALJ does not perform an explicit function-by-function analysis, "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

With regard to mental impairments, the Fourth Circuit in Mascio specifically stated that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Id. at 638 (citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). If the ALJ concludes that "the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work," the ALJ is required to "explain why . . . [a finding of] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [the] residual functional capacity." Id. Only after providing this explanation would it be

"appropriate to exclude [these limitations] from the hypothetical tendered to the vocational expert." Id.

In the present case, the ALJ expressly found that Shaw had moderate difficulties in concentration, persistence, or pace at step three of the sequential analysis. (R. 12). The ALJ stated that these difficulties were primarily a result of Shaw's medically determinable severe impairments and pain, referencing the drowsiness she experienced when taking morphine. Id. But he also cited Shaw's own statement that she cannot finish what she starts and could only focus for two hours at a time. Id. The ALJ translated his finding of moderate difficulties in concentration, persistence, or pace into an RFC limitation to simple, repetitive, routine tasks. (R. 13). But aside from identifying evidence in the record that the ALJ says "support[ed the] mental limitations consistent with the above-stated residual functional capacity," he engaged in no analysis of how limiting Shaw to simple, repetitive, routine tasks accounted for the moderate mental difficulties he identified in his step three analysis. This is the exact error that Mascio condemned.

The Commissioner contends that notwithstanding the failure to make explicit findings, the ALJ's extensive discussions of the medical evidence is sufficient to sustain his opinion. See (ECF No. 15, at 18). While the Commissioner is correct that the Fourth Circuit in Mascio rejected a per se rule on when remand is

required, there is simply nothing in the ALJ's report – which was issued only eight days after Mascio was decided – to explain how the RFC he imposed accounted for Shaw's limitations in concentration, persistence, or pace.  Indeed, Mascio explicitly rejects the notion that limiting a claimant to simple, repetitive, routine tasks can account for limitations in concentration, persistence, or pace.  See 780 F.3d at 638 (". . . . the ability to perform simple tasks differs from the ability to stay on task.").  While the opinion also provides that the ALJ can explain why a moderate limitation at step three does not translate into a limitation in the RFC, without an explanation to that effect, "remand is in order."  Id.

Since Mascio was decided, district courts in the Fourth Circuit have held that an ALJ complies with the holding in Mascio by carefully analyzing a claimant's functional capacity for concentration, persistence, or pace.  See, e.g., Sizemore v. Colvin, No. 5:15cv53, 2016 WL 483140, at *3 (W.D.N.C. Feb. 5, 2016); see also Mitchell v. Colvin, No. 7:14cv00041, 2015 WL 5690899, at *5-7 (W.D. Va. Sept. 28, 2015); St. Clair v. Colvin, No. 7:13cv00571, 2015 WL 5310777, at *5-7 (W.D. Va. Sept. 11, 2015).  An ALJ also complies with Mascio by limiting a claimant to non-production work because such limits adequately account for difficulties in staying on task.  See, e.g., Baker v. Colvin, No. 3:15-cv-00637, 2016 WL 3581859, at *3 (E.D. Va. June 7)

(collecting cases), adopted by 2016 WL 3582071 (E.D. Va. June 28, 2016). But when the ALJ fails to distinguish a claimant's ability to perform simple tasks from her ability to stay on task, remand is appropriate. See, e.g., Baez v. Colvin, No. 2:14-cv-00628, 2015 WL 9652888, at *19 (E.D. Va. Dec. 7, 2015) (collecting cases), adopted by 2016 WL 69900 (E.D. Va. Jan. 5, 2016); see also Wedwick v. Colvin, No. 2:14cv267, 2015 WL 4744389, at *23-24 (E.D. Va. Aug. 7, 2015).

Limiting a claimant to simple, repetitive work may account for limits in concentration. But here the ALJ simply has not explained how his RFC limitation accounts for Shaw's moderate limitation in persistence and pace. Moreover, because the ALJ referenced Shaw's testimony about morphine making her drowsy and her self-reported persistence issues, the difficulties in concentration, persistence, or pace may affect her ability to stay on task (i.e., stay awake and on task at work). Yet, his RFC limitation and corresponding analysis do not explain how being limited to simple, repetitive, or routine tasks will address the fact that she may have difficulty staying awake or on task.

In light of the ALJ's credibility determinations, the record offers little to support the step three finding that Shaw even has moderate difficulties in persistence or pace. Aside from her own testimony about the effect of her pain medication, Shaw's medical records consistently reported that her mental conditions were

under control and had little effect on her daily life.  (R. 346-51, 568-84).  In fact, the ALJ explicitly assigned little weight to Shaw's testimony because of the inconsistencies between her reported symptoms and the objective medical and other relevant evidence.  (R. 18).

But the ALJ's opinion did not explicitly reach the conclusion that the moderate difficulties described at step three do not translate into functional limitations at step four.  The Fourth Circuit has identified this inadequacy, or a lack of analysis explaining it, as an error which warrants remand.  See Mascio, 780 F.3d at 638.  Accordingly, because the ALJ failed to adequately account for Shaw's moderate difficulties in concentration, persistence, or pace by only limiting her to simple, routine, repetitive work, the undersigned recommends that the district court remand the case back to the SSA for further proceedings.

**C.  The ALJ Failed to Base His Decision on VE Testimony that Accounted for Shaw's Difficulties in Concentration, Persistence, or Pace.**

Shaw next contends that the ALJ relied on testimony from the VE that did not properly account for all of her impairments.  Pl.'s Br. at 20 (ECF No. 10).  That is, Shaw claims that the ALJ relied on the VE's answers to hypothetical questions that contained only those limitations he subsequently found to constitute Shaw's RFC and because the RFC was not proper, the testimony relied upon was erroneously incomplete.  Id.  After

22

reviewing the record, the undersigned finds that, because the ALJ failed to properly account for Shaw's mental limitations in concentration, persistence, or pace in his RFC assessment, the VE testimony relied upon was incomplete.[5]

At the administrative hearing, the ALJ poses hypothetical questions to the VE, and these hypotheticals must account for all of the claimant's limitations as shown by the record. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). If limitations are omitted, the VE's testimony is of limited value, and may not constitute substantial evidence. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (citing Walker, 889 F.2d at 50). Failing to consider limitations shown by the evidence, and then relying upon the errant hypothetical to form an opinion about the availability of work suitable to the claimant is error. Hancock v. Barnhart, 206 F. Supp. 2d 757, 767 (W.D. Va. 2002).

As stated above, the Fourth Circuit in Mascio held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled

---

[5] The ALJ did pose a hypothetical question that asked the VE to credit Shaw's testimony that she must lay down frequently throughout the day. (R. 45). However, this question was separate and apart from the questioning that incorporated the RFC assessment, which is the subject of Shaw's claims. In other words, the subsequent question about Shaw having to lie down frequently was apparently not intended to express a limitation that the ALJ included in his RFC assessment. In addition, the VE testified that imposing such a limit would preclude all work.

work.'" Mascio, 780 F.3d at 638 (citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). If the ALJ concludes that moderate limitations in concentration, persistence, or pace do not affect the claimant's functional ability to work, the ALJ must provide an explanation as to why these moderate limitations do not translate into a limitation in the RFC. Id. Alternatively, the ALJ may create a hypothetical which does account for moderate limitations by, for example, limiting her to non-production positions.

In this case, the ALJ only accounted for Shaw's difficulties in concentration, persistence, or pace by limiting her to simple, repetitive, and routine work in his hypothetical. (R. 44). This hypothetical failed to adequately account for, or at least explain the omission of, limitations in persistence or pace. See Mascio, 780 F.3d at 638. Therefore, because the RFC did not adequately account for all of Shaw's impairments, the VE testimony does not constitute substantial evidence to support the decision. Accordingly, the undersigned recommends that the district court remand this case to the SSA for further proceedings.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the district court vacate the decision of the Commissioner and remand the case to the SSA for further proceedings.

24

## VI.   <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
September 28, 2016